IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>            )<br>    Plaintiff,    )<br>            )<br>    v.      )<br>            )<br>FIVE FIREARMS SEIZED FROM  )<br>214 NW SHARMIN DRIVE,    )<br>ANKENY, IOWA      )<br>            )<br>    Defendant.    ) | Civil No. 4:20-cv-00178<br><br>VERIFIED COMPLAINT FOR<br>FORFEITURE *IN REM* |

Plaintiff, United States of America hereby files and serves this VERIFIED COMPLAINT IN REM and alleges as follows:

### I.   NATURE OF THE ACTION

1.   This is an action to forfeit and condemn specific property to the use and benefit of the United States of America ("Plaintiff") for involvement in a violation of 18 U.S.C. §§ 922(d)(1) and 922(g)(1), pursuant to 18 U.S.C. § 924(d).

2.   The Defendant firearms, described more fully below, are subject to forfeiture pursuant to 18 U.S.C. § 924(d)(1) as firearms involved in or used in a knowing violation of 924(g)(1) of Title 18, United States Code, namely as firearms knowingly possessed by a felon, or a person who had been convicted of a crime punishable by imprisonment for a crime exceeding one year.

3.   The Defendant firearms, described more fully below, are subject to forfeiture pursuant to 18 U.S.C. § 924(d)(1) as firearms involved in or used in a knowing violation of Sections 2 and 922(g)(1) of Title 18, United States Code, which makes it a crime for a person to aid and abet another person to illegally possess firearms, knowing he was a felon, and knowing he had been in possession of each of the firearms.

4. The Defendant firearms, described more fully below, are subject to forfeiture pursuant to 18 U.S.C. § 924(d)(1) as firearms involved in or used in a knowing violation of Section 922(d)(1) of Title 18, United States Code, which makes it a crime to dispose of a firearm to a person knowing or having reasonable cause to believe that such person has been convicted in a court of a crime punishable by imprisonment for a term exceeding one year.

## II. DEFENDANT *IN REM*

5. The Defendant Property is generally described as follows

   a) a Browning Light Twelve 12 gauge shotgun with serial number L14688;

   b) an Ithaca Model 37 Ultra Featherlight 20 gauge shotgun with serial number ULT-371758495;

   c) a Marlin Glenfield Model 60 .22 caliber rifle with serial number 22353036;

   d) a Savage, Stevens 59B, 410 gauge shotgun, with no visible serial number; and

   e) a Savage, Stevens, 15A, .22 caliber rifle, with no visible serial number.

## III. JURISDICTION AND VENUE

6. This Court has jurisdiction over an action commenced by the United States of America under 28 U.S.C. § 1345 and over an action for forfeiture under 28 U.S.C. § 1355(a).

7. This Court has *in rem* jurisdiction and venue over the Defendant Property under 28 U.S.C. §§ 1355(b) and 1395(b) as the acts or omissions giving rise to the forfeiture occurred in this district and because the Defendant Property was seized from and is located in this district.

8. The government believes, based on available knowledge, information, and belief, that the following factual contentions have evidentiary support, or will likely have evidentiary support after a reasonable opportunity for investigation and discovery.

## IV. FACTS

9. In approximately 2001-2002, Jeffrey David BAEDKE (hereinafter "BAEDKE") was charged, convicted, and sentenced in Iowa District Court for Polk County, and sentenced to 10 years' imprisonment (suspended) for arson, second degree. BAEDKE was approximately 17 to 19 years-old at the time, and his mother was aware of this crime, which is a felony conviction.

10. In approximately 2002, BAEDKE was charged, convicted, and sentenced in Iowa District Court for Polk County of criminal mischief, second degree, and numerous counts of burglary. He was sentenced to 5 years' imprisonment (suspended), which was later revoked.

11. On July 18, 2019, BAEDKE was indicted by a federal grand jury in the U.S. District Court for the Southern District of Iowa for being a felon in possession of one or more firearms, specifically, three (3) of the Defendant firearms described more fully in Paragraph 3 above, on or about June 19, 2019.

12. On October 15, 2019, BAEDKE entered into a Plea Agreement with the government, in which he pled guilty to the offense, and agreed to forfeit his interest in the Defendant firearms. As part of the Plea Agreement, BAEDKE admitted he had three felony convictions, namely for the arson, criminal mischief, and burglary charges discussed above.

13. In the Plea Agreement, BAEDKE admitted he knowingly possessed each of the three Defendant firearms on June 19, 2019, and that he knew he was a felon at the time due to his conviction in Polk County, Iowa on or about July 1, 2002 for Second Degree Arson, and for his convictions in the same court on the same date for Second Degree Criminal Mischief, and Third Degree Burglary.

14. On October 31, 2019, the U.S. District Court approved the recommendation to accept the guilty plea, thereby adjudicating BAEDKE guilty.

15. On February 28, 2020, BAEDKE was sentenced to 46 months' in federal prison, followed by 36 months' of supervised release. He was ordered to forfeit his interest in a Browning Light Twelve 12 gauge shotgun (SN: L14688); an Ithaca Model 37 Ultra Featherlight 20 gauge shotgun (SN: ULT371758495); and a Marlin Glenfield Model 60 .22 caliber rifle (SN: 22353036), as identified in the Preliminary Order of Forfeiture filed on December 19, 2019. These are the same firearms involved in this case.

16. The offense conduct underlying the forfeiture is set forth below.

17. At approximately 7:10 p.m. on June 19, 2019, RE, a process server, attempted to serve legal papers on BAEDKE at a residence at 214 NW Sharmin Drive, Ankeny, Iowa.

18. This residence belongs to LB, BAEDKE's mother, but it was his primary residence, as well, since approximately 2016.

19. Upon arriving at the residence, RE parked his vehicle in the street in front of a neighboring house.

20. RE saw a man he believed to be BAEDKE outside talking to a neighbor.

21. RE stood in the driveway and waited for BAEDKE to finish speaking with the neighbor.

22. BAEDKE then approached RE and addressed BAEDKE as "Jeff", with BAEDKE responding in the affirmative.

23. RE identified himself and told BAEDKE he was there to deliver the documents RE had in his hand.

24. BAEDKE responded that in that case he is not "Jeff." BAEDKE told RE to hold on, entered the residence, and emerged holding a shotgun.

25. This firearm was the Browning Light Twelve 12 gauge semi-automatic shotgun (serial number L14688).

26. BAEDKE pointed the shotgun at RE and worked the action of the firearm in a manner consistent with chambering a shotgun shell.

27. BAEDKE then stated, "My name's not Jeff, and if you don't get the fuck out of here right now, and take that piece of paper and everything, we're going to have problems. Do you want that?"

28. RE told BAEDKE that he just "deliver[s] this stuff" and has "nothing to do" with it.

29. BAEDKE told RE, "You're not delivering anything. Take that piece of paper, roll it up nice and tight, and shove it up your fucking ass. Get back in your fucking car and get the hell out of here."

30. BAEDKE told RE, "I'm not bullshitting you." BAEDKE then stated, "Safety off" and showed RE that he was disengaging the shotgun's safety mechanism.

31. BAEDKE proceeded to walk RE to his vehicle in the street while pointing the shotgun at him.

32. On the way to his vehicle, RE dropped documents on the ground. BAEDKE kicked the papers in the street and stated, "I don't know what that is. You didn't serve me that."

33. RE told BAEDKE to "chill out."

34. RE told BAEDKE he did not need to follow him and should "go over on your ground."

35. BAEDKE responded by threatening RE, "You know what double-aught buck is? Seen what it'd do to a man?"

36. During the confrontation, LB said "Jeffrey, put it down," clearly recognizing the threat being made with the firearm by her son.

37. RE got in his vehicle, left the area, and called 911.

38. Ankeny police officers met with RE nearby. RE told officers that BAEDKE pointed a shotgun at him while he was trying to serve BAEDKE with legal papers.

39. Officers responded to 214 NW Sharmin Drive and approached the house with their guns drawn.

40. As law enforcement approached the house, they called the telephone to the residence, which was answered by LB.

41. Law enforcement asked to speak to BAEDKE, and LB knowingly lied and told them BAEDKE was not there.

42. BAEDKE was, at the time, visible through a window to law enforcement officers conducting tactical surveillance.

43. Eventually, LB cooperated, and put BAEDKE on the phone.

44. BAEDKE agreed to come outside to speak with law enforcement.

45. Several minutes later, after tense negotiating, law enforcement took BAEDKE into custody outside the home and advised him of his *Miranda* rights.

46. When LB spoke with law enforcement on the driveway of the residence around this time, she falsely told law enforcement there were no firearms inside the residence, except a BB gun.

47. BAEDKE falsely claimed he had confronted RE with a pellet or BB gun, which he had outside because there were rabbits in his yard.

48. BAEDKE said the pellet or BB gun was behind the garage door wall, and it was retrieved by law enforcement.

49. BAEDKE admitted he "kinda" pointed the weapon at RE.

50. When law enforcement asked BAEDKE where he lived, he explained "I just stay here sometime; I don't have an address myself."

51. While at the scene, law enforcement showed RE a photo of the pellet or BB gun, and he was sure it was not the weapon BAEDKE pointed at him.

52. RE stated the firearm BAEDKE pointed at him looked like an older semi-automatic 12-gauge shotgun and was possibly a Browning, with a dove tail shape going from the chamber to the stock, blued steel barrel, wood colored stock, with a silver bolt, and the weapon was in rough shape.

53. BAEDKE was asked if he had any other weapons, and he falsely said he only had another "piece of shit" BB gun and a couple of buck knives.

54. Officers also spoke to LB.

55. LB falsely denied BAEDKE resided with her, although her home had been his primary residence since some time in or after 2016.

56. More than once, LB falsely claimed her son had confronted RE with a BB gun.

57. Originally, LB falsely told law enforcement there were no firearms inside the residence, except a BB gun.

58. LB admitted her son is a convicted felon for burning down a barn.

59. Eventually, LB said there were other firearms in the house, stating "I know there are a couple in my closet."

60. LB claimed she did not know where her son kept other firearms, but admitted her son had access to the guns.

61. Law enforcement told LB, "if there's a shotgun laying on the floor in there, I need to take it out of your house."

62. LB replied, "There's no shotgun laying on the floor. I don't know where it is for sure. I know a couple different places he might have put them."

63. LB eventually voluntarily consented to let law enforcement go with her into the residence, without a warrant, to search for firearms.

64. Once they were inside her residence, LB told law enforcement that her son had had firearms, and said "the last time I knew, he had them under the couch cushions." Thus, she told law enforcement officers the firearms were her son's, not hers.

65. LB took law enforcement to the couch on the back porch, where they recovered three Defendant firearms from under its cushions.

66. LB actually lifted the cushions to reveal the Defendant firearms.

67. LB explained that BAEDKE sometimes slept on the couch in which the Defendant firearms were found.

68. RE later personally observed the above firearms, and the Daisy BB gun seized from BAEDKE's residence, at the Ankeny Police Department. RE identified the Browning Light Twelve 12 gauge semi-automatic shotgun (serial number L14688) as the firearm BAEDKE pointed at him on June 19, 2019.

69. When LB was asked where law enforcement might find other firearms in the residence, LB replied, "I thought he told me he put them in my closet, but my closet is so full of crap I can't see anything in there."

70. LB led law enforcement to her bedroom, where two other firearms were recovered from her closet, namely a Stevens Savage Arms bolt action rifle model 598 and a Stevens Savage Arms bolt action rifle model 15A.

71. A person can have sole or joint possession of a firearm and ammunition.

72. A person who has direct physical control over a firearm and ammunition, in any way, shape, or form, is in actual possession of them.

73. A person who, although not in actual possession of a firearm and ammunition, has the ability to knowingly exercise dominion and control over them, either directly or through another person, is in constructive possession of them.

74. A person has constructive possession over a firearm and ammunition if he or she has dominion and control over the premises or residence where the firearm and ammunition is located.

9

75. On June 19, 2019, the evidence, including the statements made by LB, show BAEDKE had dominion and control over their residence and over all the firearms within it.

76. LB signed a form relinquishing the firearms to local law enforcement.

77. Federal law enforcement did not seize, and has not seized, the firearms.

78. It is illegal for a felon to actually or constructively possess a firearm or ammunition, even if he or she does not own it.

79. BAEDKE knowingly possessed – actually and constructively – each of the above-referenced firearms on June 19, 2019, knowing he had been convicted of multiple crimes punishable by imprisonment for a term exceeding one year.

80. LB was aware BAEDKE knowingly possessed – actually and constructively – each of the above-referenced firearms on June 19, 2019, knowing he had been convicted of multiple crimes punishable by imprisonment for a term exceeding one year.

81. Each of the firearms BAEDKE possessed on June 19, 2019 was manufactured outside the State of Iowa and therefore crossed a state line at some point prior to BAEDKE's possession of them.

82. On or about February 21, 2020, LB contested the criminal forfeiture of the Defendant properties by filing a claim in the above-referenced criminal case.

83. LB claimed an interest in each of the Defendant firearms.

84. Contrary to what LB told law enforcement, LB stated in her claim that the Defendant firearms were hers, not her sons, adding she inherited the firearms from her father in 2016. She provided no documentation substantiating the chain-of-ownership

for the Defendant firearms, though she did provide documentation about her father's death and his will.

85. LB has, therefore, provided contradictory statements to law enforcement about the ownership of the Defendant firearms.

## V. CLAIM FOR RELIEF

WHEREFORE, the United States prays that the Defendant Property be forfeited to the United States in this action and for such other and further relief as the Court deems proper and just.

Respectfully submitted,

Marc Krickbaum
United States Attorney

By: /s/ Craig Peyton Gaumer
Craig Peyton Gaumer
Assistant United States Attorney
U. S. Courthouse Annex, Suite 286
110 East Court Avenue
Des Moines, Iowa 50309
Tel: (515) 473-9317
Fax: (515) 473-9292
Email: craig.gaumer@usdoj.gov

## VERIFICATION

I, Jeremy Ripperger, hereby verify and declare under penalty of perjury that I am a police officer/special investigator in the Iowa Department of Commerce - Insurance Division, and was formerly an Officer for the Ankeny Police Department, and that I have read the foregoing Verified Complaint, *USA v. Five Firearms seized from 214 NW Sharmin Drive, Ankeny, Iowa*, and know the contents thereof and the matters contained in the Verified Complaint are true to my own knowledge, except for those matters not within my own personal knowledge and as to those matters, I believe them to be true.

The sources of my knowledge and information and the grounds for my belief are the official files and records of the United States and information provided to me by other law enforcement officers, as well as my investigation of this case, together with others.

Dated: June 8, 2020.

_____
Jeremy Ripperger, Officer